IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 24, 2026 Session

## JESSICA HAMPTON ET AL. v. DANIEL MILLSAPS ET AL.

**Appeal from the Chancery Court for Wilson County**
**No. 2022-CV-199    Charles K. Smith, Chancellor**

_____

**No. M2024-01036-COA-R3-CV**

_____

This appeal requires us to determine whether the Tennessee Public Participation Act mandates dismissal of Appellants/Builders' slander claim and whether the trial court properly awarded attorney's fees. After Appellants filed a construction lien against Appellees/Homeowners' property, Appellees filed a complaint against Appellants with the Tennessee Board of Licensing Contractors, wherein they asserted that Appellants did not have a valid Tennessee contractor's license. After Appellees filed the instant lawsuit, Appellants filed a counter-complaint, asserting, as relevant here, a claim for defamation based on allegedly false statements made to the Board regarding Appellants' licensure. Appellees filed a motion to dismiss Appellants' slander claim. Appellees' motion, which was predicated on the dismissal provision contained in the Tennessee Public Participation Act, asserted that Appellants' defamation claim was filed in response to Appellees' exercise of their constitutional right to free speech on a matter of public concern. The trial court granted Appellees' motion for partial dismissal and awarded attorney's fees. Appellants appeal. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

STEVEN W. MARONEY, J., delivered the opinion of the court, in which KRISTI M. DAVIS and VALERIE L. SMITH, JJ., joined.

Kathy A. Leslie, Nashville, Tennessee, for the appellants, Daniel Millsaps, Brittany Millsaps, Jeffrey Stromatt, and New Beginnings Construction, LLC.

Emily Guthrie, Nashville, Tennessee, for the appellees, Jessica Hampton, and Reginald Pierre-Paul.

# OPINION

## I. Background

Jessica Hampton and Reginald Pierre-Paul (together, "Appellees") own property located at 185 Smith Road, Lebanon, Tennessee ("the Property"). On December 31, 2019, Appellees entered a construction contract with "Daniel Paul Millsaps/New Beginnings Construction, an Individual . . . with contractor's license number MCN14245 ('Contractor')" for the construction of a home on the Property. The parties' agreement further provided that: (1) "Contractor shall obtain all licenses and permits necessary for proper completion of the Work"; (2) "Contractor shall perform the Work in a workmanlike manner"; and (3) "Contractor shall be solely responsible for and shall supervise and direct all construction under this Agreement."

The original contract price was $340,034.32, which was to be paid in five draws. However, during construction, several change orders were entered: (1) change order one, dated May 20, 2020, which added $11,732.89 to the total price; (2) change order two, dated November 3, 2020, which added $20,168.95 to the total price; and (3) change order three, dated January 18, 2021, which added $11,100.00 to the total price. Appellees paid change order one; however, they assert that they never authorized change orders two or three pursuant to section 10 of the construction contract, and that the change orders were requested after the completion of items listed therein.

As a result of the non-payment of two of the change orders, on August 18, 2021, New Beginnings Construction, LLC ("New Beginnings") filed a notice of lien against the Property. According to the complaint, New Beginnings "is a Limited Liability Company that was administratively dissolved on August 11, 2021." Mr. Millsaps is a "member of New Beginnings," and "Brittany Millsaps is a member of and the registered agent for New Beginnings." The lien was signed by Mr. Jeffrey Stromatt (together with Daniel Millsaps, Brittany Millsaps, and New Beginnings, "Appellants"). According to the complaint, Mr. Stromatt is also a member of New Beginnings.

Appellees filed a complaint with the Tennessee Board of Licensing Contractors ("Board") due to numerous alleged issues with construction of the Property, including roofing, septic, insulation, and ventilation problems. In addition to the construction issues, Appellees allegedly discovered that the license number provided by Mr. Millsaps, "MCN14245," did not exist. As discussed further below, Appellees performed multiple license searches with the Tennessee Department of Commerce and Insurance and found that there was no contractor's license associated with "Daniel Paul Millsaps" or "Daniel Millsaps."

On August 27, 2021, Appellees sent notice to the Appellants, demanding that they commence an action pursuant to Tennessee Code Annotated section 66-11-130 to enforce

their lien.[1] This notice also stated that Mr. Millsaps provided a contractor's license number that did not exist. On March 9, 2022, Appellees sent Appellants a demand to release the lien. Appellants refused to do so, and the instant litigation ensued.

On September 14, 2022, Appellees filed a complaint against Appellants in the Chancery Court for Wilson County ("trial court"). Appellees alleged causes of action for: (1) invalid lien; (2) slander of title; (3) breach of contract; (4) breach of the duty of good faith and fair dealing; and (5) fraud. Appellees also sought a declaratory judgment/injunction requiring Appellants to release their lien.

On December 22, 2022, Appellants filed a joint-answer and counter-complaint, asserting causes of action for breach of contract and slander. As set out in context below, Appellants' counter-complaint for slander was based on allegedly false and defamatory statements made by Appellees to the Board, which statements allegedly "impu[t]e[d] criminal conduct" on the part of Mr. Millsaps. Appellants asserted that these statements were made with reckless disregard for their truth and "caused [Appellants] not to be able to renew their contractor's license." On January 20, 2023, Appellees filed an answer in opposition to Appellants' counter-complaint, *see infra*.

On January 24, 2023, Appellees filed a Tennessee Rule of Civil Procedure 12.02 motion "to dismiss [Appellants'] counterclaim of slander." Appellant's motion to dismiss was brought pursuant to the Tennessee Public Participation Act ("TPPA"), Tennessee Code Annotated section 20-17-101, *et seq.* Specifically, Appellees sought "relief under the [TPPA] for [Appellants'] attempted retaliation against them for exercising their right to free speech on a matter of public concern." On April 20, 2023, Appellees filed a "motion for partial judgment on the pleadings" concerning their release of lien, slander of title, and breach of contract claims.

On October 25, 2023, Appellants filed an answer in opposition to Appellees' TPPA motion for partial dismissal, which the trial court heard on November 1, 2023. By order of December 4, 2023, the trial court granted the motion and dismissed Appellants' counter-complaint for slander. By the same order, the trial court awarded Appellees attorney's fees and costs under section 20-17-107 of the TPPA.

On January 3, 2024, Appellants filed a Tennessee Rule of Civil Procedure 59.04 motion to alter or amend the December 4, 2023 order and also asked the trial court to make

---

[1] Tennessee Code Annotated section 66-11-130 provides:

Upon written demand of the owner, the owner's agent, or prime contractor, served on the lienor, requiring the lienor to file a complaint, petition, or civil warrant to enforce the lienor's lien, and describing the real property in the demand, the proceeding must be commenced, or the claim filed in a creditors' or foreclosure proceeding, within sixty (60) days after service, or the lien is forfeited.

specific findings.  Appellees opposed the motion, which was heard on May 29, 2024.  By order of June 17, 2024, the trial court denied Appellants' motion to alter or amend.[2]  On July 11, 2024, Appellants filed a notice of appeal to this Court, appealing the trial court's order of June 17, 2024, dismissing their slander claim.[3]

## II. Issues

Appellants raise the following issues for review as stated in their brief:

I.      Whether the trial court erred in granting the [Appellees'] Motion to Dismiss the cause of action of slander pursuant to the [TPPA].

II. Whether the trial court erred in granting the Appellees attorney's fees and costs pursuant to TPPA.

II.      Whether the trial court erred in refusing to make specific findings of fact in regard to the Motion to Alter or Amend.

## III. Standard of Review

The TPPA states that, in ruling on a motion to dismiss filed thereunder, "[t]he court may base its decision on supporting and opposing sworn affidavits stating admissible evidence upon which the liability or defense is based and on other admissible evidence presented by the parties."  Tenn. Code Ann. § 20-17-105(d).  In other words, when a motion to dismiss is brought under the TPPA, the trial court is not limited to the pleadings.  Rather, as this Court explained in *Reiss v. Rock Creek Construction, Inc.*, No. E2021-01513-COA-R3-CV, 2022 WL 16559447 (Tenn. Ct. App. Nov. 1, 2022), "when a party files a motion to dismiss based on the TPPA, the dismissal procedure delineated in the TPPA should be followed regarding the respective claims." *Id.* at *8.

Accordingly, in reviewing the trial court's decision on Appellees' motion for partial dismissal under the TPPA, we apply the burden-shifting procedures outlined in the Act. As discussed below, the TPPA procedures first require determination of whether the action against the petitioning party involves that party's exercise of the right to free speech, right to petition, or right of association.  If so, the court shall dismiss the legal action unless the responding party establishes a prima facie case for each essential element of the claim in the legal action. Tenn. Code Ann. § 20-17-105.

---

[2] Under Tennessee Rule of Appellate Procedure 4, the filing of a Rule 59.04 motion to alter or amend a non-final judgment extends the time for filing the notice of appeal to run "from the entry of the order . . . granting or denying . . . such motion." Tenn. R. App. P. 4(b).

[3] Although the trial court's June 17, 2025 order does not constitute a final judgment, Tennessee Code Annotated section 20-17-106 provides: "The court's order dismissing or refusing to dismiss a legal action pursuant to a petition filed under [the TPPA] is immediately appealable as a matter of right to the court of appeals. The Tennessee Rules of Appellate Procedure applicable to appeals as a matter of right governs such appeals."

- 4 -

As the Tennessee Supreme Court has explained:

> To establish a "prima facie" case under the TPPA, a party must present enough evidence to allow the jury to rule in his [or her] favor on that issue. This evidence may include "sworn affidavits stating admissible evidence" and "other admissible evidence." Tenn. Code Ann. § 20-17-105(d). As is the case when a court rules on a motion for summary judgment or motion for directed verdict, the court should view the evidence in the light most favorable to the party seeking to establish the prima facie case and disregard countervailing evidence. *See, e.g.,* ***Griffis v. Davidson Cnty. Metro. Gov't***, 164 S.W.3d 267, 284 (Tenn. 2005) (summary judgment); ***Conatser v. Clarksville Coca-Cola Bottling Co.***, 920 S.W.2d 646, 647 (Tenn. 1995) (directed verdict).

***Charles v. McQueen***, 693 S.W.3d 262, 281 (Tenn. 2024).

Whether a party established a prima facie case for purposes of a TPPA petition is a legal issue, which we review de novo. *See* ***Charles***, 693 S.W.3d at 272-73. Likewise, "[i]ssues of constitutional interpretation are questions of law, which we review de novo without any presumption of correctness given to the legal conclusions of the courts below." ***J.A.C. by & through Carter v. Methodist Healthcare Memphis Hosps.***, 542 S.W.3d 502, 510 (Tenn. Ct. App. 2016) (quoting ***Waters v. Farr***, 291 S.W.3d 873, 882 (Tenn. 2009)).

## IV. Analysis

### A. Dismissal of Appellant's Slander Claim

This Court has explained that,

> [t]o establish a prima facie case of defamation in Tennessee, the plaintiff must establish that: (1) a party published a statement; (2) with knowledge that the statement is false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *See* Restatement (Second) of Torts § 580 B (1977); ***Press, Inc. v. Verran***, 569 S.W.2d 435, 442 (Tenn.1978). "Publication" is a term of art meaning the communication of defamatory matter to a third person. ***Quality Auto Parts Co. v. Bluff City Buick Co.***, 876 S.W.2d 818, 821 (Tenn.1994).

***Sullivan v. Baptist Memorial Hosp.***, 995 S.W.2d 569, 571 (Tenn.1999).

Here, Appellants' counter-complaint for slander was based on the following averments:

25. The [Appellees] would not pay the amount owed pursuant to the contract.

26. As the result of the [Appellees'] failure to pay, the [Appellants] filed a valid lien against the Property.

27. In an effort further not to pay any money and to pressure the [Appellants] to relinquish their right to demand payment of money rightfully owed, the [Appellees] filed a scurrilous complaint with the Board.

28. The complaint stated that Daniel Millsaps is not a licensed contractor. That statement is false. Not only is that statement false, but it is defamatory.

29. The complaint stated that Daniel Millsaps did not attempt to rectify any alleged problems perceived by the [Appellees]. That statement is false. Not only is it false, but it is defamatory.

30. That communication made to the Board was unreasonable and unnecessary in light of its falsity.

31. That communication made to the Board impu[t]es criminal conduct of the [Appellants]. The [Appellees] published the statements with knowledge that the statements are false and such statements are defaming to the [Appellees].

32. The [Appellees] made those statements with reckless disregard for the truth of the statements made and or negligently made them without ascertaining the truth of the statements.

33. The false statements made caused harm and injury to the [Appellants].

34. The [Appellants] have suffered emotional distress and pain and suffering.

35. The false statements made have caused the [Appellants] not to be able to renew their Contractor's license and such cannot conduct business.

36. As a proximate cause of the [Appellees'] actions, the [Appellants] continue to suffer damages to be proven at trial.

In their answer to the counter-complaint for slander, Appellees responded, in relevant part, as follows:

26. The [Appellees] admit that the [Appellants] filed a lien against the Property and deny all other averments contained in Paragraph 26.

27. The [Appellees] admit that they filed a complaint with the Tennessee Board of Licensing Contractors and deny all other averments contained in Paragraph 27.

28. The [Appellees] admit that the complaint stated that Mr. Millsaps is not a licensed contractor and deny all other averments contained in Paragraph 28.

***

35. The [Appellees] deny the averments contained in Paragraph 35. [Appellees] deny that Mr. Millsaps has a contractor's license and the

- 6 -

Qualifying Agent license alleged to be held by [] New Beginnings Construction, LLC was Mr. Stromatt, not Mr. Millsaps, as shown in Exhibit D, attached hereto and incorporated by reference. Communications from the Tennessee Board of Licensing Contractors show that the complaint was closed "with a flag" and note that [Appellants] had "not applied for renewal in over two years and appear[ed] to be out of business. All contact with [Appellants] has failed." This communication is attached hereto and incorporated by reference as Exhibit E.

36. The [Appellees] deny that the [Appellants] are entitled to any of the relief sought.

Appellees specifically denied all other allegations set out in Appellants' counter-complaint, *supra*.

As noted above, Appellees moved to dismiss Appellants' defamation claim under the TPPA, Tennessee Code Annotated section 20-17-104(a), which provides that, "[i]f a legal action is filed in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may petition the court to dismiss the legal action."

The Tennessee Supreme Court has explained the purpose of the TPPA as follows:

> The TPPA attempts to strike a balance between two competing interests. On the one hand, it seeks to "encourage and safeguard the constitutional rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law." Tenn. Code Ann. § 20-17-102. "[A]t the same time," it also seeks to "protect the rights of persons to file meritorious lawsuits for demonstrable injury." *Id*.
> Like many other anti-SLAPP [*i.e.,* strategic lawsuits against public participation] statutes, the TPPA establishes a procedure for swift dismissal of non-meritorious claims. The defendant in a SLAPP suit may file a petition to dismiss the action within sixty days of service of the action or "at any later time that the court deems proper." *Id.* § 20-17-104(a)-(b).

*Charles*, 693 S.W.3d at 267.

As noted in *Charles*, the TPPA "establishes a procedure for swift dismissal of non-meritorious claims." *Id*. "[W]hen a party files a motion to dismiss based on the TPPA, the dismissal procedure delineated in the TPPA should be followed regarding the respective claims." *Reiss*, 2022 WL 16559447, at *8. Accordingly, we apply those procedures in reviewing the trial court's decision. *Id.*

As provided in section 20-17-105, the TPPA procedure involves a burden-shifting

- 7 -

framework for courts to apply in determining whether the lawsuit should go forward after the TPPA petition is filed:

> (a) The petitioning party has the burden of making a prima facie case that a legal action against the petitioning party is based on, relates to, or is in response to that party's exercise of the right to free speech, right to petition, or right of association.
> (b) If the petitioning party meets this burden, the court shall dismiss the legal action unless the responding party establishes a prima facie case for each essential element of the claim in the legal action.
> (c) Notwithstanding subsection (b), the court shall dismiss the legal action if the petitioning party establishes a valid defense to the claims in the legal action.

Tenn. Code Ann. § 20-17-105.

> As this Court has explained:

> The TPPA provides relief for parties who partake in protected activity constituting either the exercise of the right of association, the exercise of the right of free speech, or the exercise of the right to petition. Tenn. Code Ann. §§ 20-17-104(a), 20-17-105. Specifically, if the petitioning party makes a prima facie case that they have participated in protected activity under the TPPA, the court may then dismiss the action against them, "unless the responding party establishes a prima facie case for each essential element of the claim in the legal action." Tenn. Code Ann. § 20-17-105(a)(b).

*Doe v. Roe*, 638 S.W.3d 614, 618 (Tenn. Ct. App. 2021). In other words,

> when presented with a motion to dismiss filed pursuant to the TPPA, the threshold step in the trial court's analysis must be to determine whether the claim falls within the TPPA's parameters. This is determined by analyzing whether the petitioning party has demonstrated "a prima facie case that a legal action against the petitioning party is based on, relates to, or is in response to that party's exercise" of certain protected rights. Tenn. Code Ann. § 20-17-105(a); *Doe*, 638 S.W.3d at 619; *Charles*, 2022 WL 4490980, at *3. Second, if the court determines that the petitioning party has met such requirements of the statute, "the court shall dismiss the legal action unless the responding party establishes a prima facie case for each essential element of the claim in the legal action" or "if the petitioning party establishes a valid defense to the claims in the legal action." Tenn. Code Ann. § 20-17-105(a); *Nandigam* [*Neurology, PLC v. Beavers*,] 639 S.W.3d [651,] at 668 [Tenn. Ct. App. 2021]; *Charles*, 2022 WL 4490980, at *10.

*Reiss*, 2022 WL 16559447, at *6 (footnote omitted).

Here, in its December 3, 2023 order granting Appellees' motion to dismiss, the trial court found that both elements set out in *Reiss* were met, to-wit:

(1) The [Appellees] exercised their right to free speech on a matter of public concern. There is no evidence in the pleadings to indicate that the [Appellees] made their statements with reckless disregard for the truth of the statements, negligence, or malice. The pleadings show that the [Appellees] attempted to determine whether Mr. Millsaps was a licensed contractor.
(2) The [Appellants] have failed to establish a prima facie case of slander.

In moving to dismiss Appellants' counter-complaint for slander under the TPPA framework, Appellees asserted that Appellants "attempted [to] retaliate[e] against them for exercising their right to free speech on a matter of public concern." In their response in opposition to Appellees' motion, Appellants asserted "that [Appellees] cannot present a prima facie case demonstrating that they have a right that is protected by [the TPPA]." As we have explained, in the context of the TPPA,

[a]n "exercise of the right of free speech" means "a communication made in connection with a matter of public concern . . . that falls within the protection of the United States Constitution or the Tennessee Constitution." Tenn. Code Ann. § 20-17-103(3). . . .

Notably, the definition[] above reveal[s] that . . . the "exercise of the right of free speech" require[s] that the activity be connected with a "matter of public concern." Tenn. Code Ann. § 20-17-103(2-3). As defined by the statute, a "matter of public concern" includes issues relating to: "(A) Health or safety; (B) Environmental, economic, or community well-being; (C) The government; (D) A public official or public figure; (E) A good, product, or service in the marketplace; (F) A literary, musical, artistic, political, theatrical, or audiovisual work; or (G) Any other matter deemed by a court to involve a matter of public concern." Tenn. Code Ann. § 20-17-103(6). As should be evident—and as some commentators have already observed— matters of public concern are "broadly defined" under the statute. *Todd Hambridge et al., Speak Up.*, 55 Tenn. B.J. 14, 15 (2019) . . . .

*Doe*, 638 S.W.3d at 618 (Tenn. Ct. App. 2021). Applying the foregoing definition, we agree with the trial court's conclusion that the TPPA applies insofar as Appellees "exercised their right to free speech on a matter of public concern."

As detailed in the Appellees' complaint, upon discovering various construction issues with the home, Appellees contacted Mr. Millsaps to resolve the issues. When Mr.

- 9 -

Millsaps allegedly failed to respond to Appellees' requests, they filed a complaint with the Board. In filing the complaint, Appellees used the license number set out in the parties' contract, *i.e.*, MCN14245. On June 10, 2021, Appellees sent a letter to Appellants' former counsel notifying Appellants that, "Mr. Millsaps entered this contract in his individual capacity. Upon filing a complaint with [Board], [Appellees] discovered that Mr. Millsaps entered into and worked on this job without a contractor's license." Appellants responded by filing a notice of lien on August 18, 2021.

On August 27, 2021, Appellees sent a second letter to Appellants, demanding release of the lien. In relevant part, the August 27th letter provides:

> [Appellees] signed a contract with Daniel Millsaps, individually, d/b/a as a sole proprietorship pursuant to the express terms of that contract (enclosed). Ln that contract, Mr. Millsaps committed fraud and lied to my clients when he advertised that he was a licensed contractor. Mr. Millsaps was not a licensed contractor. Tennessee's lien laws only allow licensed contractors to have liens against real property. Tenn. Code Ann. § 66-11-102(a). It is also a crime: "Any person, firm or corporation that engages or offers to engage in contracting without a license as required by § 62-6-103 or who violates the terms and conditions of any license or renewal granted by the [B]oard pursuant to this part commits a Class A misdemeanor." Tenn. Code § 62-6-120(a). It is also a violation of the Tennessee Consumer Protection Act, among other laws.

If a contractor, who is in the business of building homes for the public, is operating without a license, this clearly would constitute a "matter of public concern." Tenn. Code Ann. §20-17-103(6). Specifically, such unlawful practice potentially would create a negative impact on: (1) public "[h]ealth or safety," Tenn. Code Ann. § 20-17-103(6)(A); (2) "environmental or community well-being," Tenn. Code Ann. § 20-17-103(6)(B); or "[a] good, product, or service in the marketplace," Tenn. Code Ann. § 20-17-103(6)€. Accordingly, Appellees' statements to the Board, which were made in an effort to ascertain the status of Mr. Millsaps' license, was a clear exercise of their free speech on a matter of public concern.

Having correctly determined that Appellees met their burden to show that they were exercising their right to free speech on a matter of public concern, Tenn. Code Ann. § 20-17-105(a), the TPPA applies, and the trial court was required to dismiss Appellants' slander claim "unless [they] establishe[d] a prima facie case for each essential element of the claim. . . ." Tenn. Code Ann. § 20-17-105(b).

As the **Sullivan** Court explained, a plaintiff claiming defamation on the basis of slander has the burden to show that the disputed statement was false and that it was made: (1) with knowledge that the statement was false and defaming to the plaintiff; (2) with

- 10 -

reckless disregard for the truth of the statement; or (3) with negligence in failing to ascertain the truth of the statement. **Sullivan**, 995 S.W.2d at 571 (citations omitted).

In their October 25, 2023 answer to Appellees' TPPA motion to dismiss, Appellants argued that:

> [Appellees] assert that Daniel Millsaps was not a licensed contractor. With any prudent due diligence, they would have found out that Daniel Millsaps is a qualifying agent for New Beginnings Construction, LLC which did have a contractor's license. As a qualifying agent, he operated under their license. Not only did they make the assertion in the complaint, but they went an extra step and repeated that same false statement to the Board of Contractors.

> ***

> Assuming arguendo that the [Appellees] did not know that the statement was false, they had to know that to make such a statement and complaint to the Board [] would defame the [Appellants]. . . . [T]heir publishing of the statements despite their falsity was reckless or at the minimum, negligent. They did not attempt to ascertain the truth of their statements and publication.

The record does not support Appellants' statements.

In their January 20, 2023 reply to Appellants' counter-complaint for slander, Appellees denied "that Mr. Millsaps is a licensed contractor," and stated that their "search of the Tennessee Department of Commerce & Insurance's "'License Search and Verification' feature and communications from the Tennessee Department of Commerce & Insurance show that there is no Tennessee Contractor's License issued to Mr. Millsaps." The referenced searches and correspondence were included as exhibits to Appellees' reply.

From the filings, Appellees conducted searches using the names "Daniel Millsaps," "Daniel Paul Millsaps," and the license number "MCN14245." Each of these searches returned the result "No records found." Appellees then inquired with Thorn Puckett, an employee with the Tennessee Department of Commerce & Insurance," asking "[c]ould you help [Appellees] confirm whether MCN14245 is a valid contractor's license number or if anyone named 'Daniel Millsaps' or 'Daniel Paul Millsaps' is a licensed contractor in the state." In his response, Mr. Puckett informed Appellees that, "[T]here are no contractor's licenses that match that license number you provided me. I was not able to locate any license associated with 'Daniel Millsaps' or 'Daniel Paul Millsaps'." Mr. Puckett then asked whether Appellees would like "some information regarding how you might file a complaint against this individual/company[.]"

As described in context above, Appellants also argued that: "Daniel Millsaps is a

- 11 -

qualifying agent for New Beginnings Construction, LLC which did have a contractor's license. As a qualifying agent, he operated under their license." In their reply, Appellees denied that Mr. Millsaps was a qualifying agent operating under New Beginnings' license. Rather, they maintained that "the Qualifying Agent license alleged to be held by [] New Beginnings Construction, LLC was Mr. Stromatt, not Mr. Millsaps."

Indeed, exhibit D to Appellees' reply shows that they contacted Mr. Puckett a second time to "confirm the name of the qualifying agent for . . . [t]he license number [] 70299 and the firm name [] New Beginnings Construction." Mr. Puckett replied that, "The qualifying agent present on license #70299 New Beginnings Construction is Jeffrey Stromatt." Mr. Puckett also stated that license 70299 "expired 10/31/2022." As shown in exhibit E to Appellees' reply, on or around December 7, 2022, the Board notified Appellees that, "[Appellants have] not applied for renewal [of their contractor's license] in over two years and appear[] to be out of business. All contact with the [Appellants] has failed."

In the first instance, Appellants' statement that Appellees "did not attempt to ascertain the truth of their statements and publication" is not correct. From the foregoing exhibits, it is clear that Appellees did their due diligence to determine whether Appellants (and specifically Mr. Millsaps, with whom they contracted) had a valid contractor's license. The proof tends to show that they did not. So, not only does it appear that Appellees' statements to the Board were warranted, but it also appears that Appellees' statement that Mr. Millsaps did not hold a valid contractor's license was true.

As this Court has noted, "The plaintiff bears the burden of proving 'that a false and defamatory statement was published concerning the plaintiff.' Therefore, truth is also a defense to a claim alleging defamation." ***Wagner v. Fleming***, 139 S.W.3d 295, 302-303 (Tenn. Ct. App. 2004), *perm. app. denied* (Tenn. June 21, 2004) (citation omitted). Throughout these proceedings, Appellees have maintained that Appellants have no valid contractor's license, and the evidence discussed above appears to substantiate this allegation. As such, the trial court could have dismissed Appellants' slander claim under Tennessee Code Annotated section 20-17-105©'s mandate that, "the court shall dismiss the legal action if the petitioning party establishes a valid defense to the claims in the legal action."

However, even if we assume, *arguendo*, that the Appellees' statements regarding Appellants' licensure were not true, based on the searches and correspondence set out above, Appellees had a good-faith basis to assume that Appellants had no license. The searches for Mr. Millsaps' name and the search for the license number set out in the parties' contract all returned "No records found." Appellees' inquiries concerning New Beginnings' license indicated that the qualified agent was Mr. Stromatt, not Mr. Millsaps. Furthermore, the notification of the Board's decision indicated that New Beginnings' license had expired. For these reasons, no reasonable jury could find that Appellees made statements to the Board that were knowingly false, or which were made with reckless

disregard for the truth, and Appellants failed to meet their burden to establish the prima facie elements for their defamation claim. Accordingly, the trial court did not err in dismissing same.

## B. Award of Attorneys' Fees and Costs under the TPPA

Under Tennessee Code Annotated section 20-17-107, "[i]f the court dismisses a legal action pursuant to a petition filed under this chapter, the court shall award to the petitioning party . . . [c]ourt costs, reasonable attorney's fees, discretionary costs, and other expenses incurred in filing and prevailing upon the petition . . . ." Tenn. Code Ann. § 20-17-107(a)(1).

Appellants' sole argument concerning whether the trial court erred in awarding Appellees attorney's fees and costs rests on their assertion that the TPPA does not apply. Having determined that Appellees exercised their right to free speech on a matter of public concern, Appellees established a prima facie case that they participated in a protected activity under the TPPA. Accordingly, contrary to Appellants' contention, and for the reasons discussed above, the TPPA does apply.

Having further concluded that Appellants failed to make a prima facie case for slander insofar as they cannot show that the disputed statements were false or were made with: (1) knowledge that the statements were false and defaming to Appellants; (2) reckless disregard for the truth of the statements; or (3) negligence in failing to ascertain the truth of the statements, *Sullivan*, 995 S.W.2d at 571, the trial court did not err in granting Appellees' motion to dismiss Appellants' slander claim. As the prevailing party, Appellees were entitled to an award of attorney's fees and costs under section 20-17-107 of the TPPA.[4]

## C. Denial of Appellants' Motion to Alter or Amend

On January 3, 2024, Appellants filed a motion to alter or amend the trial court's order dismissing their slander claim. As an exhibit to their motion, Appellants attached the following draft letter from the Tennessee Department of Commerce & Insurance:

---

[4] Appellants do not take issue with the amount of attorney's fees awarded.


Department of
**Commerce &
Insurance**

**This is a draft letter.**

November 2, 2023

ATTN:JEFFREY STROMATT
NEW BEGINNINGS CONSTRUCTION
504  Moncrief Ave
GOODLETTSVILLE, TN 37072

RE:    Contractor's License ID # 70299

This document serves as official confirmation of the contractor's license status with the Tennessee Board for Licensing Contractors:

**CONTRACTOR LICENSE NAME:** NEW BEGINNINGS CONSTRUCTION
**LICENSE ID#:** 70299
**EXPIRATION DATE:** October 31, 2022
**STATUS:** FAILED TO RENEW
**ORIGINAL LICENSE DATE:** October 03, 2016
**CLASSIFICATION(S) AND MONETARY LIMIT:** $500,000.00; BC, BC-A
**QUALIFYING AGENT(S):**

JEFFREY STROMATT
DANIEL MILLSAP

If you have any questions, my contact information is listed below.

Sincerely,

*Chikita.Wimberly*
Chikita Wimberly
Reg Board Admin Assistant 2
Tennessee Board for Licensing Contractors

Relying on the foregoing document, Appellants argued that Mr. Millsaps was a

- 14 -

licensed contractor such that "[t]he judgment should be amended or altered denying the partial motion to dismiss." Appellants admitted that the document was not previously submitted to the trial court. However, they argued that, if "the court opines that the document demonstrating that Millsaps was [a] licensed contractor should have been attached to the [Appellants'] response; the failure to do so was a mistake. That mistake should not have been fatal to the [Appellants'] response."

Appellants also asked the trial court to adopt the following findings, to-wit:

[Appellants] request that the court make specific findings of fact to include, but not limited to, that Mr. Millsaps is a licensed contractor as a qualifying agent; that when [Appellants] proffered evidence that Millsaps was a licensed contractor that the request was denied and the reason for denial; that whether [Appellees] made the allegation based upon negligence in that the [Appellees] could have found out with proper due diligence that Mr. Millsaps was a qualifying agent and as such a licensed contractor . . .

By order of June 17, 2024, the trial court denied Appellants' motion without incorporating their proposed findings.

We review a trial court's decision on whether to grant a Rule 59.04 motion to alter or amend a judgment under an abuse of discretion standard. *Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012) (citing *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003)). An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011) (citations omitted). When reviewing a discretionary decision by the trial court, we presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Westbrooks v. Westbrooks*, No. E2018-01993-COA-R3-CV, 2019 WL 5566351, at *2 (Tenn. Ct. App. Oct. 29, 2019) (citing *Loewen v. Loewen*, No. M2014-02501-COA-R3-CV, 2015 WL 6438753, at *2 (Tenn. Ct. App. Oct. 22, 2015)).

The purpose of a Rule 59.04 motion to alter or amend a judgment is to provide the trial court with an opportunity to correct errors before the judgment becomes final. *Burris v. Burris*, 512 S.W.3d 239, 245 (Tenn. Ct. App. 2016) (citations omitted). Tennessee courts have determined that a litigant may base a Tennessee Rule of Civil Procedure 59.04 motion to alter or amend on one of four basic grounds: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in law; and (4) other manifest injustice. *Parigin v. Mills*, No. E2016-00640-COA-R3-CV, 2017 WL 1032740, at *5 (Tenn. Ct. App. Mar. 16, 2017) (citing *Vaccarella v. Vaccarella*, 49 S.W.3d 307, 312 (Tenn. Ct. App. 2001)).

Here, Appellants' motion rests on the purported proof of licensure attached as an

exhibit to their motion, *supra.* As noted above, this document was not submitted to the trial court until Appellants filed their Rule 59.04 motion. "In order to sustain a motion to alter or amend under Rule 59.04 based on newly discovered evidence, 'it must be shown that the new evidence was not known to the moving party prior to or during trial and that it could not have been known to him [or her] through exercise of reasonable diligence.'" **Kirk v. Kirk**, 447 S.W.3d 861, 869 (Tenn. Ct. App. 2013) (quoting **Seay v. City of Knoxville**, 654 S.W.2d 397, 399 (Tenn. Ct. App. 1983)). That is not the case here.

Throughout these proceedings, Appellees have maintained that none of the Appellants held a valid Tennessee contractor's license. Certainly, Appellants were in the better position to prove the existence of their license, yet they did not attempt to do so until filing their Rule 59.04 motion. Appellants fault Appellees for a lack of due diligence in searching for Appellants' license before complaining to the Board, yet Appellants failed to tender the foregoing document in any response or filing leading up to the dismissal of their slander claim. Appellants assert that this oversight was a mistake, which should not be held against them. However, a review of the exhibit indicates that the license, if valid, was issued on October 3, 2016.

Therefore, Appellants have failed to show "that the new evidence was not known to [them] prior to or during trial and that it could not have been known to [them] through exercise of reasonable diligence.'" **Kirk**, 447 S.W.3d at 869 (citation omitted). Accordingly, the new evidence ground for grant of a Rule 59.04 motion is inapplicable here.

Furthermore, there is no "other manifest injustice" to warrant Rule 59.04 relief. Here, the trial court's denial of Appellants' Rule 59.04 motion did not prejudice them. As correctly noted in Appellees' brief, even if the trial court had considered Appellees' late-submitted proof of licensure, their slander claim still would fail. As discussed in detail above, the TPPA protects good-faith reports to government agencies, regardless of whether the reported concern ultimately proves accurate. Here, Appellees conducted diligent license searches, consulted with state officials, and reasonably believed that Mr. Millsaps lacked a valid license. Thus, even if Mr. Millsaps was properly licensed, Appellees' report remains protected under the TPPA, and dismissal of the slander claim was required by law.

### D. Denial of Appellants' Motion for Specific Findings of Fact

Finally, we address Appellants' request for specific findings of fact. "The decision to deny or grant a motion for additional findings under Rule 52.02 is within the discretion of the trial court, and we will not disturb that absent a finding of abuse of discretion."[5]

---

[5] As already noted, "[a]n abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous

***White v. Bradley Cnty. Gov't***, 639 S.W.3d 568, 585 (Tenn. Ct. App. 2021) (citing ***Holladay v. Speed***, 208 S.W.3d 408, 415 (Tenn. Ct. App. 2005)).

Tennessee Rule of Civil Procedure 52.01 provides that, "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially . . . ." By its plain language, Rule 52.01 applies to bench trials or other proceedings requiring specific findings of fact. *See* ***Waller v. Varangon Corp.***, No. W2019-02211-COA-R3-CV, 2021 WL 306466, fn. 6 (Tenn. Ct. App. Jan. 29, 2021), *perm, app. denied* (Tenn. Jun. 15, 2021). Indeed, the Rule specifically states that "[f]indings of fact . . . are unnecessary on decisions of motions under Rule 12 [*i.e.* motions to dismiss]." In other words, as ***Waller*** makes clear, Rule 52.02 motions are not available in cases resolved at the pretrial motion stage. ***Id.*** Because the slander claim was dismissed on pretrial motion, the trial court appropriately denied Appellants' Rule 52.02 request for specific findings.

## V. Conclusion

For the foregoing reasons, the trial court's order dismissing Appellant's slander claim is affirmed. The case is remanded to the trial court for such other proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellants, Daniel Millsaps, Brittany Millsaps, Jeffrey Stromatt, and New Beginnings Construction, LLC. Execution for costs may issue if necessary.

s/ Steven Maroney
STEVEN W. MARONEY, JUDGE

---

assessment of the evidence, or relies on reasoning that causes an injustice." ***Wright,*** *supra,* at 176.